# Weber, Appellant, *v.* Rorer

*Landlord and tenant—Replevin—Evidence—Payment.*

In an action of replevin where the question under the pleadings is, how much rent, if any, is in arrear at the time of the distress, it is improper to reject evidence that overpayments of rents were made by the tenant in previous quarters, and to limit the proof to such payments only as were made in the quarter for which the rent was distrained: Warner v. Caulk, 3 Wharton, 193, distinguished.

Argued Feb. 3, 1892. Appeal, No. 133, July T., 1891, by plaintiff, A. M. Weber, from judgment of C. P. Montgomery Co., March T., 1890, No. 131, on verdict for defendant, Clinton Rorer, bailiff for Paul Jacoby. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Replevin. Defendant pleaded " no rent in arrears."

At the trial, before WEAND, J., the evidence was to the effect that Paul Jacoby leased to plaintiff a farm, by a written lease, dated March 10, 1886, for a yearly rent of $300 payable in quarterly instalments of $75 each. Plaintiff claimed that there was no rent due, as he had made overpayments in previous quarters, which more than offset the amount of the rent due for the two quarters for which the distress was made.

Counsel for plaintiff offered in evidence the testimony of Algernon S. Jenkins, taken by defendant in the former trial, to show that defendant's agent, with his authority and consent, prepared a statement or settlement in which he recognized the fact that Weber had on certain occasions paid rent in advance, recognizing those payments, and to show how the payments were made, to be followed up by proof that plaintiff has receipts showing that he has paid in conformity with his lease to his landlord a sum exceeding $1,175.83, which is more than the rent due up to the two quarters embraced in the defendant's answer. Objected to.

The Court: The court will permit the plaintiff to prove any payments of rent in advance referring to the period commencing July 1, 1889, and ending January 1, 1890, but will exclude any testimony referring to overpayments made for previous quarters in any other way. Objection sustained, and exception. [1]

Plaintiff offered to prove by a witness on the stand, and by the production of receipts, which were acknowledged upon the former trial by the landlord to be correct, that plaintiff had paid to him or his agents for and on account of rent $1,175.83, and that there was now a balance due from the landlord to the tenant by reason thereof. Objected to, objection sustained and exception. [2]

The court charged in part as follows:

" I further charge you as a matter of law that the tenant in this case can only set off against this claim for rent any amounts he has paid on account of the rent for those two quarters. He claims that he has overpaid the landlord by mistaken payments and by payments made for previous quarters for which he received no credit, but under the law as the court understands it this defence is not allowable, and unless the plaintiff, the tenant, shows that he has paid the rent for those two particular quarters or on account thereof, your verdict must be for the landlord for such an amount as is shown to be due.

" It is claimed by the plaintiff that on August 13 he paid $75 cash, that on September 16 he paid taxes, $19.09, and on November 13 he paid cash $30. He also testifies to a payment of $56, which has been allowed him in the claim made by the landlord. So that the amount shown by these three payments aggregate $124.09. Now if these amounts were paid on account of this particular rent it would be a defence; but when the tenant is called to the stand he first says it was paid on account of a levy made previously and for rent due before July 1, 1889. If the payments were so made they cannot be credited on the rent which is now distrained for.

" He further testifies upon further cross-examination that they were paid on account of rent generally. Now it appears from the testimony which is undisputed here that there had been a deficiency of rent due July 1, and that after that time there had been a levy for that rent and then some arrangement made between the tenant and Mr. Hoover, who was acting for Jacoby, in relation to its payment, and that afterwards these amounts were paid. Now if they were paid generally on account of rent, and if there was no specific appropriation by the tenant when he paid them, of which there was not any evidence in this case, then the landlord would have a right to appropri-

ate those payments to the rent which was least secure or which was first due, and especially would that be the case if Mr. Hoover and Mr. Weber so agreed. [So that in either aspect of this case as the court views it, all these amounts so paid would have to be credited on the rent which was due before July 1, and then there would be no evidence that anything was paid on the rent which became due after that, and that being the case your verdict would have to be in favor of the defendant, the landlord, for the amount claimed by him, $145.70.] [3]

" In cases of this kind where the jury find for defendant, it is their duty to find not only the amount of rent due but also the value of the goods. Therefore in this case your verdict would be in favor of the defendant for the rent due, $145.70, with interest from January 1, 1890, and the value of goods distrained, $328. There has been a calculation made here showing what the interest would amount to, which the jury can take. You are not obliged to take it for truth, but can verify it. If it is true, your verdict would be in favor of defendant for $158.08, rent due, and the value of goods, $328."

Verdict for defendant for $158.08, rent in arrear, and value of goods distrained $328. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence, and (3) instructions, quoting bills of exceptions and portion of charge in brackets.

*Charles Hunsicker*, for appellant.—In order for the landlord to recover it must appear that rent was in arrear: Haines v. Moyer, 1 Wood. Dec. 171; Tiley v. Moyer, 43 Pa. 404.

*George G. Hoover*, *Isaac Chism* with him, for appellee, cited De La Cuesta v. Ins. Co., 136 Pa. 63; Warner v. Caulk, 3 Wh. 192, cited with approval in Allegaert v. Smart, 2 Penny. 320; Andrew v. Hancock, 5 E. C. L. 10; Fairman v. Fluck, 5 Watts, 316; Hill v. Truby, 117 Pa. 325.

OPINION BY MR. JUSTICE McCOLLUM, October 3, 1892.

A. M. Weber occupied a farm of Paul Jacoby from the first of April, 1886, to April 1, 1890, under a lease reserving an annual rent of three hundred dollars, payable quarterly. On the fourth of February, 1890, Jacoby, alleging that there was $145.70 rent in arrear on the first of January preceding, issued

a warrant to Clinton Rorer, sheriff of Montgomery county, authorizing him to collect the same by distraining the goods and chattels of the tenant or other person or persons, found on the demised premises. The goods and chattels of Weber were accordingly levied upon, and he brought this action of replevin to recover them. The question under the pleadings was, how much rent, if any, was in arrear at the time of the distress. It is claimed by the appellee that the appellant was in arrear for the rent which accrued between the first of July, 1889, and the first of January, 1890, and by the appellant that at the time of the distress he was not in arrear for any rent whatever. It will be seen that by the terms of the lease the total amount of rent which accrued prior to January first was $1,125. The appellant offered to prove on the trial that he paid to Jacoby or his agent on account of rent and in conformity with his lease the sum of $1,175.83. This offer was rejected and the appellant was restricted in his proof of payments made before July 1, 1889, to such only as referred to the rent which accrued between that date and January 1, 1890. It appears that this ruling was based on Warner v. Caulk, 3 Wharton, 193. In that case the landlord distrained for the third quarter's rent, and the tenant having replevied the goods, alleged that the landlord had broken his covenant to make certain repairs and improvements on the demised premises, and that by reason thereof he had sustained great damage, out of which he was willing and ready to defalk the rent due. To this the landlord replied that he had not covenanted to make the repairs and improvements as claimed. The jury were instructed that if the landlord had broken the agreements in the contract of demise on his part to be performed, the measure of damages was the difference in yearly value between the demised premises as they remained, and as they would have been if he had performed his agreements, but that only one fourth of the damages so ascertained could be deducted from the rent distrained for. This instruction was in accordance with the rule laid down in the English case of Andrew v. Hancock, 1 Broderip & Bingham, 37, 5 English Common Law Reports, 490, which is in effect that each year's or quarter's rent, as the case may be, must bear its proportion of the equitable defence arising from the default of the landlord.

In the cases cited the matters which the tenant sought to deduct from the rent were not payments on account of it, but damages caused by the landlord's failure to perform his agreement, or taxes and paving rates paid by the tenant to save his goods from distress. These cases do not sustain the rejection of the appellant's offer. Its fair and obvious import was to show payments on account of the rent reserved in the lease under which he occupied the farm, and that these payments extinguished the rent which had accrued prior to the distress. If previous to the first of July, 1889, the landlord had received and indorsed on this lease payments on account of rent, which equalled or exceeded the entire amount of rent accrued thereon, by the first of January, 1890, it will hardly be contended that such payments could be excluded on the ground that they did not specifically refer to rent accruing after their date. Such payments are not in the nature of a cross-demand or equitable defence arising from the default of the landlord, nor does their relevancy depend on the method of proving them. Any competent and credible evidence which shows that they were made is as effective as the landlord's acknowledgment of them.

We have considered the case upon the offers of evidence. Whether the appellant will be able to sustain them is a question which does not now arise. All that we decide is that it was error to refuse him an opportunity to produce his evidence in support of his offers.

The specifications are sustained.

Judgment reversed and new venire ordered.